UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Chris Chesley, et al.**

    v.                                       Case No. 14-cv-468-PB
                                                 Opinion No. 2015 DNH 115

**DIRECTV, Inc., et al.**


**MEMORANDUM AND ORDER**

This is a Fair Labor Standards Act ("FLSA") minimum wage and overtime case brought by seven individual plaintiffs against DIRECTV TV, LLC and Multiband Corporation.

Plaintiffs installed and repaired DIRECTV satellite dishes and related equipment.  Although they worked under the supervision of DIRECTV, plaintiffs were hired and paid by Multiband or another unnamed entity.  To resolve the issues presented by defendants' motions to dismiss, I must determine whether DIRECTV can be considered plaintiffs' joint employer under the FLSA and whether plaintiffs' complaint otherwise alleges sufficient facts to support their minimum wage and overtime claims.


## I.   BACKGROUND[1]

### A.   DIRECTV's Provider Network

DIRECTV is the largest provider of satellite television

---

[1] Unless otherwise specified, the facts are taken from the complaint.  Doc. No. 1.

services in the United States.  To install and repair its
equipment, DIRECTV uses a network of providers who supply it
with technicians (the "Provider Network").  The plaintiffs are
seven individuals who have at one time worked for a provider
performing technician services for DIRECTV.  Six of the
plaintiffs worked for Multiband, a member of DIRECTV's provider
network, and the seventh worked for another unnamed provider.

DIRECTV conceived of, formed, and manages its Provider
Network.  It operates the Provider Network nationwide from its
headquarters in El Segundo, California.  The plaintiffs assert
that all of the providers derive most, if not all, of their
income from the work they do for DIRECTV.

DIRECTV controls the Provider Network through detailed
agreements (the "Provider Agreements") that establish policies,
procedures, performance standards, and payment method
requirements.  The Provider Agreements establish nearly
identical business relationships between DIRECTV and each
provider.  Among other things, the Provider Agreements require
that technicians must wear DIRECTV shirts and show customers a
DIRECTV identification card.  Technicians are also required to
display DIRECTV insignia on the vehicles they drive to
customers' homes.

Plaintiffs typically began their workdays by receiving

daily work schedules from DIRECTV's dispatching system.  DIRECTV delivered a "Work Order" to each technician using the technician's unique "Tech ID Number."  The Work Order was assigned via a centralized computer software system known as SIEBEL.

After receiving their daily work schedules, the plaintiffs typically called each customer to confirm the timeframe within which the technician expected to arrive at the customer's home. The plaintiffs then traveled to each assigned job according to their work schedules.  Upon arriving at each job site, the plaintiffs checked in with DIRECTV's dispatching system by telephone.  After completing each assigned job, the plaintiffs reported to DIRECTV that the installation was complete and then worked directly with DIRECTV employees to activate the customer's service.

B.   **Payment of Technicians**

Six of the seven plaintiffs were hired and paid for their work by Multiband and the seventh was hired and paid by another unnamed member of the Provider Network.

Plaintiffs were paid on a "piece-rate" basis for satisfactorily completing certain enumerated "productive" tasks, but they were not compensated for other necessary work such as:

assembling satellite dishes, driving to and between
job assignments, reviewing and receiving schedules,
calling customers to confirm installations, obtaining
required supplies, assisting other technicians with
installations, performing required customer
educations, contacting DIRECTV to report in or
activate service, working on installations that were
not completed, and working on "rollback" installations
where Plaintiffs had to return and perform additional
work on installations previously completed.

Doc. No. 1 at 11-12.

Plaintiffs were also subjected to "chargebacks" for a

variety of reasons, including improper installation, customer

calls regarding how to operate a remote control, and a below-95%

customer satisfaction rating for the technician's services.

Several of the plaintiffs were also classified as "independent

contractors" and were required to purchase certain supplies

necessary to perform installations such as screws, poles,

concrete, and cables.

Because plaintiffs were subjected to "chargebacks," were

not compensated for all hours worked, and were not reimbursed

for necessary business expenses, they claim that they received

an effective wage below the minimum wage of $7.25 per hour.

Additionally, plaintiffs claim that they routinely worked more

than 40 hours per week for the defendants, but were not paid the

overtime premium required by law.

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted).

In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id.  Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from

those allegations, and then determine if the claim is plausible.
Id.  The plausibility requirement "simply calls for enough fact
to raise a reasonable expectation that discovery will reveal
evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The
"make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555 ("Factual allegations must be enough to raise a right to
relief above the speculative level....").

     Generally, under Rule 12(b)(6) I may properly consider
"only facts and documents that are part of or incorporated into
the complaint; if matters outside the pleadings are considered,"
then I must convert it to a motion for summary judgment.  Rivera
v. Centro Medico de Turabo, Inc., 575 F.3d, 10, 15 (1st Cir.
2009) (citing Fed. R. Civ. P. 12(d)).  The First Circuit
recognizes an exception to this rule allowing consideration of
"documents the authenticity of which are not disputed by the
parties; [ ] official public records; [ ] documents central to
plaintiff's claim; [and] documents sufficiently referred to in
the complaint" in a motion to dismiss for failure to state a
claim.  Id. (citing Alt. Energy, Inc. v. St. Paul Fire & Marine
Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

### III.   ANALYSIS

The plaintiffs contend that DIRECTV and Multiband violated the FLSA's minimum wage and overtime compensation provisions. See 29 U.S.C. §§ 206 (minimum wage), 207 (overtime compensation).  To state a valid FLSA claim, plaintiffs must allege (1) that they were employed by the defendant, (2) that their work involved interstate activity, and (3) that they performed work for which they were under-compensated.  29 U.S.C. §§ 206(a), 207(a)(1); see Pruell v. Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012).  DIRECTV argues that the plaintiffs have not adequately pled the first and third elements.  Multiband challenges the third element and also argues that two of the plaintiffs' claims are time-barred by the applicable statute of limitations.

### A.   Employer Status of DIRECTV

The relevant FLSA provisions apply only to "employees" and their "employers."  See 29 U.S.C. §§ 206(a), 207(a)(1).  The act defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  It further states that to "'employ' includes to suffer or permit to

work."  29 U.S.C. § 203(g).

An employee can have more than one employer under the FLSA.

29 C.F.R. § 791.2 (defining joint employment); see Falk v.

Brennan, 414 U.S. 190, 195 (1973); Chao v. Hotel Oasis, 493 F.3d

26, 34 (1st Cir. 2007).  The Department of Labor's ("DOL")

regulations interpreting the FLSA state:

> [I]f the facts establish that the employee is employed
> jointly by two or more employers, i.e., that
> employment by one employer is not completely
> dissociated from employment by the other employer(s),
> all of the employee's work for all of the joint
> employers during the workweek is considered as one
> employment for purposes of the Act.

29 C.F.R. § 791.2(a).  The relevant regulation also provides

examples of situations in which a joint employment relationship

will generally be found to exist, including where companies

agree to share employee services, where one employer acts

directly or indirectly in the interest of the other employer,

and where one employer controls the other employer.  29 C.F.R. §

791.2(b).

To determine whether an employment relationship exists,

courts look to the "'economic reality' of the totality of the

circumstances bearing on whether the putative employee is

economically dependent on the alleged employer."  Baystate Alt.

Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998).  To

that end, the First Circuit has identified four factors that

must be considered in determining whether workers were jointly

employed by more than one "employer": "whether the alleged

employer (1) had the power to hire and fire the employees; (2)

supervised and controlled employee work schedules or conditions

of employment; (3) determined the rate and method of payment;

and (4) maintained employment records."[2]  Baystate, 163 F.3d at

675 (citing Bonnette v. Cal. Health & Welfare Agency, 704 F.2d

1465, 1470 (9th Cir. 1983)).  In applying these factors, the

court has recognized that "it is the totality of the

circumstances, and not any one factor, which determines whether

a worker is the employee of a particular alleged employer."  Id.

at 676.

The plaintiffs in the present case do not base their joint

employment claim on the first, third or fourth Baystate factors.

---

[2] In Baystate, the First Circuit noted that the putative
employers proposed a five factor test that had previously been
used "for the purpose of determining whether a worker is an
'employee' or an 'independent contractor.'"  Baystate, 163 F.3d
at 675 n.9.  Because, however, the defendants in Baystate were
not claiming on appeal that the plaintiffs were independent
contractors, the court rejected this proposal and instead
applied the four factors used by the Ninth Circuit in Bonnette
v. California Health & Welfare Agency to determine whether the
workers were jointly employed.  Id.; Bonnette v. Cal. Health &
Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983).  Similarly,
here, DIRECTV does not base its motion on a claim that the
plaintiffs were independent contractors.  Rather, its motion is
premised on the theory that the plaintiffs were not jointly
employed by DIRECTV and Multiband.  Accordingly, Baystate is
controlling in this case.

Instead, they rely on allegations in the complaint that concern

the degree of control that DIRECTV exercised over the plaintiffs

and the members of the Provider Network.  With respect to the

plaintiffs, the complaint alleges that DIRECTV  controlled the

plaintiffs by (1) deciding which workers would be assigned to

specific job sites; (2) directly determining each worker's daily

schedule; (3) monitoring the work by requiring workers to check

in when jobs were begun and completed; (4) requiring workers to

wear DIRECTV shirts and display DIRECTTV identification when

dealing with customers; and (5) establishing specific quantity

control standards for workers that it enforced with quality

control personnel and customer feedback.  These allegations are

then buttressed by additional allegations supporting plaintiffs'

claim that DIRECTV effectively controlled the providers for whom

the plaintiffs worked by making the providers economically

dependent on DIRECTV.  Viewed together, plaintiffs argue, these

allegations are sufficient to state a viable joint employment

claim.

    Given the liberal standard that governs motions to dismiss,

I agree with the plaintiffs that the complaint sets forth a

plausible joint employment claim.  I thus join other courts that

have denied motions to dismiss brought by DIRECTV in similar

cases.   See, e.g., Berger v. DIRECTV, Inc., No. 3:14-cv-01661-

PK, 2015 WL 1799996, at *6 (D. Or. Apr. 16, 2015) (applying the four factors used in Baystate); Arnold v. DirecTV, Inc., No. 4:10CV00352AGF, 2011 WL 839636, at *6-7 (E.D. Mo. Mar. 7, 2011) (same); see also Doucette v. DIRECTV, Inc., No. 2:14-cv-02800-STA-tmp, 2015 WL 2373271, at *5 (W.D. Tenn. May 18, 2015); Renteria-Camacho v. DIRECTV, Inc., No. 14-2529, 2015 WL 1399707, at *2 (D. Kan. Mar. 26, 2015); Lang v. DirecTV, Inc., 735 F. Supp. 2d 421, 432-34 (E.D. La. 2010).

**B.   Under-Compensation**

DIRECTV and Multiband both argue that the complaint fails to allege sufficient facts to support a claim that defendants failed to comply with the FSLA's minimum wage and overtime provisions.

The First Circuit recently addressed the pleading standard for FLSA minimum wage and overtime claims in Pruell v. Caritas Christi. See Pruell, 678 F.3d 10, 12-14 (1st Cir. 2012). In Pruell, the plaintiffs alleged that they "regularly worked hours over 40 in a week and were not compensated for such time." Id. at 13. The First Circuit held that, standing alone, that statement was a "borderline" phrase, but was insufficient to survive a motion to dismiss because it was "little more than a paraphrase of the statute." Id. The court also considered whether allegations that the defendant required unpaid work

11

through mealtimes cured the deficiency in the pleading.

Although it recognized that such an allegation "described a

mechanism by which the FLSA may have been violated," the court

nonetheless concluded that the complaint failed to provide

examples of the type of work done during unpaid times or

estimates as to the amount of unpaid time.  Id. at 14. As a

result, the court concluded that the plaintiffs "could still

have been properly compensated under the FLSA" because the work

may not have been compensable under the FLSA or the plaintiffs

may have received additional compensation that offset any

deficiency created by other uncompensated time.  Id.

Accordingly, the First Circuit determined that the complaint was

"deficient although not by a large margin."  Id.

　　　I apply Pruell in evaluating defendants' challenge to the

claims at issue here.

　　　1.   Minimum Wage Violations

　　　Plaintiffs allege that they were paid "pursuant to a piece-

rate payment scheme" that resulted in an effective minimum wage

below the statutory minimum wage of $7.25 per hour.  See Doc.

No. 1 at 11.  They make no allegations, however, about how much

they were paid per task or how long each task took.  Therefore,

it is impossible to discern whether the effective wage rate in a

given week was below the statutory minimum.  See United States

v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir.

1960) (no minimum wage violation occurs if the total wage paid

divided by the hours worked equals or exceeds the applicable

minimum wage).  Accordingly, I grant DIRECTV's and Multiband's

motions to dismiss the minimum wage claims.

        2.    Overtime Compensation

        The Department of Labor's regulations interpreting the FLSA

provide instruction on how to compute the "regular rate" for

employees who are paid on a piece rate basis.  See 29 C.F.R. §

778.111(a).  The relevant regulation provides:

> When an employee is employed on a piece-rate basis,
> the regular hourly rate of pay is computed by adding
> together total earnings for the workweek from piece
> rates and all other sources (such as production
> bonuses) and any sums paid for waiting time or other
> hours worked (except statutory exclusions). This sum
> is then divided by the number of hours worked in the
> week for which such compensation was paid, to yield
> the pieceworker's "regular rate" for that week.

Id.  The regulation further provides instruction on computing

the overtime rate to which a piece rate employee is entitled:

> For overtime work the pieceworker is entitled to be
> paid, in addition to the total weekly earnings at this
> regular rate for all hours worked, a sum equivalent to
> one-half this regular rate of pay multiplied by the
> number of hours worked in excess of 40 in the week.

Id.[3]

---

[3] The regulations also provide for an alternative method of
complying with the FLSA that has not been raised here.  See 29

Here, the complaint tracks the overtime regulations in stating that "[p]lantiffs routinely worked more than 40 hours per week for Defendants" and "were not paid the overtime premium required by applicable law."  Doc. No. 1 at 13.  Unlike in Pruell, however, the complaint in this case also alleges the approximate number of hours per week each plaintiff worked.  Id. at 15-19.  That is, for each plaintiff, the complaint asserts that he worked "approximately 50 hours," "approximately 60 hours," or "in excess of 60 hours" "performing tasks for the benefit of Defendants, many unpaid."  Id.

Additionally, the plaintiffs allege that they were paid on a "piece rate" basis for certain "productive" tasks, but not for other necessary work.  Id. at 11.  The plaintiffs listed various tasks for which they were not compensated, such as:

> assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

Id. at 11-12.  Of course, not all of these tasks are necessarily compensable under the FLSA.  See 29 U.S.C. § 254(a) (non-

C.F.R. § 778.418.

14

"principal" preliminary or postliminary work not compensable);
29 C.F.R. §§ 785.27-785.32 (various types of training not
compensable); id. § 785.47 (insignificant time beyond scheduled
working hours not compensable).  Nevertheless, the defendants
have not argued that these tasks are non-compensable and it is
entirely plausible that many are.  Furthermore, unlike the
allegations in Pruell, in which the plaintiffs claimed that they
worked unpaid through meal-breaks but did not describe the
nature of the work performed, the plaintiffs in this case have
alleged specific activities that they completed for which they
were not compensated.  Accordingly, I deny the motion to dismiss
as to the claim for unpaid overtime compensation.

Although Twombly and Iqbal require more than "a formulaic
recitation of the elements of a cause of action," they do not
require plaintiffs to provide detailed factual allegations.  See
Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  In
the context of a claim for unpaid overtime wages, there is
little more for a plaintiff to allege than the number of hours
over 40 that he worked for which he was not compensated at one
and a half times his regular rate.  See Pruell, 2013 WL 2420918,
at *2 (holding that the plaintiff stated a claim for overtime
compensation when she added a statement to her amended complaint
that "Plaintiffs regularly worked hours over 40 in a week and

15

were not compensated for such time, including premium pay.")

Moreover, despite the defendants' argument that the plaintiffs

failed to allege a single specific week for which they were not

compensated, that level of detail is unnecessary at this stage.

See Davis v. Abington Mem. Hosp., 765 F.3d 236, 243 (3d Cir.

2014) ("[W]e do not hold that a plaintiff must identify the

exact dates and times that she worked overtime.").

Accordingly, I deny defendants' motions to dismiss the

overtime compensation claim.

## C.    **Statute of Limitations**

Multiband moves to dismiss the claims of two plaintiffs –

Allan Arel and John Patterson – based on the FLSA's two-year

statute of limitations.[4]  In response, the plaintiffs argue that

the act's three-year limitations period applies because the

defendants acted willfully.  Therefore, they argue, their claims

are not wholly time-barred.[5]

---

[4] Arel worked from October 2011 to September 2012, and first
filed a complaint against Multiband on October 21, 2014, in the
instant action.  Doc. No. 1 at 18; Doc. No. 26 at 24.  Patterson
worked from 2008 to October 2011, and first filed a complaint
against Multiband on November 1, 2013, in Acfalle v. DIRECTV.
Doc. No. 1 at 17; Doc. No. 26 at 25; Acfalle v. DIRECTV, No. 13-
8108 ABC, Doc. No. 1 (C.D. Cal. Nov. 1, 2013).  Accordingly, if
a two-year limitations period applies, both Arel and Patterson's
claims are time-barred.

[5] DIRECTV and Multiband also contend that all of the plaintiffs'
claims are time-barred at least in part.  The plaintiffs do not

Under the FLSA's two-tiered limitations provision, a civil enforcement action must be brought "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  The Supreme Court has defined a willful violation of the FLSA as one in which "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see also Baystate, 163 F.3d at 679-80 & n.14 (1st Cir. 1998) (applying Richland Shoe standard); Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1079 (1st Cir. 1995) (same). Consequently, for the three-year limitations period to apply, Arel and Patterson must allege that Multiband either knew, or showed reckless disregard for whether its conduct was unlawful under the FLSA.

The plaintiffs' only allegation of willfulness is that the defendants' adoption of a "fissured employment" scheme is an attempt to avoid the FLSA.  See Doc. No. 26 at 24.  The

_____

dispute that some of the claims are partially time-barred, but they disagree about the length of the limitations period. Because the only issue as to the other plaintiffs is the length of the limitations period and not whether any part of their claims survive, I reserve judgment on this issue until a later stage.

17

plaintiffs acknowledge, however, that a fissured employment scheme is not per se illegal under the FLSA.  At most, the allegation shows that the defendants were aware of the FLSA and attempted to align their conduct in a manner that was cost-effective for them while not violating the FLSA.  Such circumstances do not rise to the level of willfulness.

Accordingly, I grant Multiband's motion to dismiss Arel and Patterson's claims.

## VI.   CONCLUSION

For the reasons set forth above, I grant in part and deny in part DIRECTV's and Multiband's motions to dismiss (Doc. Nos. 20 and 22).  The claims brought by Arel and Patterson are dismissed.  For the remaining plaintiffs, their minimum wage claims are dismissed.  In all other respects, the motions are denied without prejudice to plaintiffs' right to file an amended complaint within 30 days.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 8, 2015

cc:   George A. Hanson, Esq.
     Ryan D. O'Dell, Esq.

Todd C. Werts, Esq.
H. Jonathan Meyer, Esq.
Michael Tiliakos, Esq.
Natalie F. Hrubos, Esq.
Brownwyn L. Roberts, Esq.
Christina J. Fletcher, Esq.