**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **CHRIS CHESLEY, ALLEN AREL, DAVID HUTCHINSON, DAVID MOOSMAN, JOHN PATTERSON, and CHRISTOPHER THOMAS,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**DIRECTV, INC., DIRECTV, LLC, and MULTIBAND CORP.,**<br><br>        **Defendants.** | **Case No. 1:14-cv-00468-PB**<br>**District Judge Paul J. Barbadoro**<br>**Magistrate Judge Andrea K. Johnstone**<br><br><br>**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT WITH MEMORANDUM IN SUPPORT** |

Plaintiffs Chris Chesley, Allen Arel, David Hutchinson, David Moosman, John Patterson, and Christopher Thomas, by and through their undersigned counsel, move for an order approving the settlement each of them has reached with Defendants DIRECTV, Inc. ("DIRECTV"); DIRECTV, LLC ("DIRECTV"); and Multiband Corp. (Multiband") (collectively, "Defendants"). Consistent with their settlement agreements with the Plaintiffs, Defendants do not oppose Plaintiffs' request for approval.[1]

## I.        PROCEDURAL HISTORY

This case is one of several cases filed across the country on behalf of technicians who installed and serviced DIRECTV systems. While this action has been proceeding in this Court since October 2014, Plaintiffs have been pursuing these claims against DIRECTV and certain

---

[1] Defendants do not oppose this motion for purposes of settlement approval only. However, Plaintiffs acknowledge that Defendants do not affirmatively endorse the arguments made herein and reserve all rights to oppose any legal or factual position taken by Plaintiffs in this motion at a later time should the Court not approve the settlement and/or in other actions.

of its contracting partners for many years, with some participating in the predecessor suits *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) and *Acfalle v. DIRECTV, Inc.*, Case No. 13-8108 (C.D. Cal.) and others participating in *Arnold v. DIRECTV*, No. 10-0352-JAR (E.D. Mo.).

### A.     *Lang v. DIRECTV*

Plaintiffs Chris Chesley, David Moosman, John Patterson, and Christopher Thomas previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.).  After the *Lang* Plaintiffs defeated a motion to dismiss and to strike the class allegations (*Lang* Dkt. 42), the *Lang* court granted Plaintiffs' motion for conditional class certification (*Lang* Dkt. 245).

The parties in the *Lang* matter engaged in some limited class discovery which revealed that Plaintiffs' damages would be difficult to calculate on common proof at trial. As a result, the parties filed a Joint Motion to Decertify the *Lang* action, which the *Lang* court granted on September 3, 2013, dismissing all of the *Lang* opt-in Plaintiffs without prejudice, and tolling the statute of limitations for 60 days to permit the *Lang* opt-in Plaintiffs to refile their individual claims. (*Lang* Dkt. 467.)

### B.     *Acfalle v. DIRECTV* – **Central District of California**

On November 1, 2013, Plaintiffs Chris Chesley, David Moosman, John Patterson, and Christopher Thomas, filed their individual claims against Defendants in *Acfalle v. DIRECTV, Inc.*, Case No. 13-8108 (C.D. Cal.) (Dkt. 1) an action filed by former *Lang* Plaintiffs and others in the Central District of California. (*See Acfalle* Dkt. 1.)

On July 22, 2014, the *Acfalle* court entered an order "dropping" 277 non-California Plaintiffs with FLSA-only claims (including Plaintiffs Chris Chesley, David Moosman, John Patterson, and Christopher Thomas), dismissing them *without prejudice* to refile their claims

closer to their home states or where they performed their work, and tolling the running of their statute of limitations for 90 days. (*See Acfalle* Dkt. 71.)

###### C.    *Arnold v. DIRECTV*

Plaintiff Allen Arel previously filed a consent to become a party plaintiff in *Arnold v. DIRECTV*, No. 10-0352-JAR (E.D. Mo.), a conditionally-certified collective action, pending in the Eastern District of Missouri. Unlike *Lang,* which involved only those technicians that were classified as independent contractors, *Arnold* concerned technicians who were acknowledged W-2 employees of DIRECTV, and DIRECTV's contracting partners such as Multiband, in addition to technicians who were classified as independent contractors.

The *Arnold* matter was heavily litigated. Virtually every issue that could have been disputed was subject to motion practice in that case. The parties briefed two motions to dismiss–one for failure to state a claim (*Arnold* Dkt. 19), and one to dismiss or stay under the first-filed rule in light of the *Lang* action (*Arnold* Dkt. 35). In September 2012, the *Arnold* Plaintiffs moved for conditional collective action certification pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). DIRECTV vigorously opposed certification of the putative collective action, and on September 28, 2012, the *Arnold* Court granted conditional certification of a nation-wide collective action consisting of service technicians who installed and serviced DIRECTV satellite television systems. (*Arnold* Dkt. 121 at 17.)   Following briefing on the form of notice to be issued to the court (*see Arnold* Dkt. 122 & 123) and after notice was sent, approximately three thousand plaintiffs opted into the *Arnold* matter. Subsequently, the parties agreed to decertify the "contractor" technicians and the *Arnold*

court ordered that such plaintiffs could pursue individual claims and ordered their statute of limitations continue to be tolled for 90 days. (*Arnold* Dkt. 221, 244.)

**D.     Plaintiffs' Motion to Consolidate Before the Judicial Panel on Multidistrict Litigation**

By October 2014, around the time that this action was filed, Plaintiffs' counsel had filed at least 10 other related actions, with more than 30 additional actions to be filed, across the country against DIRECTV asserting claims similar to the ones alleged here. To conserve the resources of all parties and the courts, Plaintiffs moved to consolidate and transfer the actions pursuant to 28 U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation ("JPML"). (*See In re DIRECTV Wage & Hour Litigation*, MDL No. 2594.)  DIRECTV opposed the motion and, on February 6, 2015, the JPML denied transfer.  (MDL Dkt. 51.)

**E.     Proceedings Before this Court**

After the JPML denied transfer, the parties continued to heavily litigate this case and the related actions. The original Complaint in this matter was filed against Defendants on October 21, 2014. (Dkt. 1).  Defendants filed motions to dismiss on January 5, 2015  (Dkt. 20, 22).  On June 8, 2015, the Court issued an Order dismissing the claims of Plaintiffs Allan Arel and John Patterson, dismissing the minimum wage claims of all Plaintiffs, and denying Defendants' motions to dismiss in all other respects.  (Dkt. 37).  Plaintiffs filed an Amended Complaint on July 30, 2015, and Defendants filed their answers to Plaintiffs' Amended Complaint on August 17, 2015.  (Dkt. 39, 40-41).  On November 14, 2016, pursuant to Fed. R. Civ. Pro. 41(a)(1)(A)(i), Plaintiffs filed a Stipulation of Voluntary Dismissal With Prejudice of Claims of Plaintiff Jason Heroux.  (Dkt. 53).

The parties conducted extensive discovery, including the production of over 14,257 pages of documents specific to this case. (Hanson Decl. ¶ 5.) Further, the parties deposed 15

witnesses in this case. *Id.*  In addition to the discovery particular to this case, there were over 3.4 million documents exchanged in connection with the nationwide litigation as a whole and over 666 total depositions were conducted. (Hanson Decl. ¶ 5.)

Further, comprehensive summary judgment motions were briefed in 12 other cases pending elsewhere comprising over 100 separate motions.  *Id.*  The orders issued on those motions were mixed. Defendants were successful on three motions, the plaintiffs survived summary judgment in five cases, and dispositive motions were pending in six cases (at various stages of briefing) when stays were put in place to allow the parties to explore a global settlement. *Id.*  And courts issued divergent orders on nearly every discreet legal issue.

In October 2017, the first jury trial of a related case was held in the United States District Court for the District of Arizona.  That trial resulted in a defense verdict for DIRECTV, the only defendant in that case.  Conversely, several weeks after the Arizona trial, the Central District of California issued an order granting Plaintiffs' motion for summary judgment on similar issues that had been decided in DIRECTV's favor in that Arizona trial.  *See Le v. DIRECTV*, Case No. 2:16-cv-01369 (C.D. Cal.). With those opposing results in hand, the parties conducted a mediation with the intent to settle all related cases nationwide. This case was stayed to give the parties time to explore settlement. (Dkt. 167.)  After several weeks of vigorous negotiations, the parties agreed to a settlement framework that includes the resolution of this case.

## II.    THE PARTIES' SETTLEMENT

The settlements before the Court were the result of an intensive, weeks-long, arms-length negotiation.  Michael Dickstein, a well-respected mediator with deep experience mediating a wide range of wage and hour litigation matters, conducted an in-person mediation with representatives for all the parties on November 30, 2017, in Dallas, Texas.

(Hanson Decl. ¶ 6.) Although substantial progress was made on November 30, the parties were unable to reach final agreement at the mediation.  Over the course of subsequent weeks, and with the assistance of Mr. Dickstein, the parties continued negotiations and ultimately reached an agreement on a framework for settling this and the other related cases on January 3, 2018.  (Hanson Decl. ¶ 7.)

Unlike a class or collective action settlement where a class representative sponsors a settlement on behalf of the class, here, each of the Plaintiffs has specifically agreed to his own individual settlement agreement with Defendants to resolve the claims that he asserts in this case. (Hanson Decl. ¶ 8.)  Those individual settlement agreements are attached as Exhibit A to the Hanson Declaration.  The settlement agreements do not effect general releases of all claims Plaintiffs may have against Defendants (for example, the releases contained in the settlement agreements do not extend to claims for workplace discrimination), but are limited to the release of disputes relating to any wage and hour issues, including but not limited to claims for retaliation based on wage and hour issues and any other such claims that were brought or could have been brought in this case.  (Hanson Decl. Ex. A.)  In exchange for the release and dismissal of the case, each Plaintiff will receive between $3,500 and $45,450, based on the length of time that he installed and serviced DIRECTV satellite television systems. (Hanson Decl. ¶ 10.) The settlement agreements also provide that Plaintiffs' counsel will receive the discounted sum of $26,000 per Plaintiff in attorney's fees and costs. (Hanson Decl. ¶ 13.)

## III.   THE SETTLEMENT SHOULD BE APPROVED

FLSA claims can be settled only under the supervision of the Secretary of Labor or approved by a district court. 29 U.S.C. § 216(b), (c); *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Singleton v. AT&T Mobility Servs., LLC*, 146 F.

Supp. 3d 258, 260 (D. Mass. 2015). To approve an FLSA settlement, the court must find that the settlement represents a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-55; *Singleton*, 146 F. Supp. 3d at 260. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-55. But first, the court must determine whether the proposed settlement is both fair and reasonable, and this includes an evaluation of the reasonableness of the attorneys' fees sought. *Singleton*, 146 F. Supp. 3d at 260. Based on the contested nature of this litigation and the quality of the settlement, Plaintiffs respectfully submit that this Court should approve the parties' settlement agreements because they are a fair and reasonable resolution of a *bona fide* dispute.

> **A.** **The Liability Portion of the Settlement Should Be Approved**

There can be no doubt that the claims at issue in this case constitute a *bona fide* dispute. For many years, Plaintiffs have sought redress for what they allege to be Defendants' failure to pay them as required by the FLSA and the United States Department of Labor's interpreting regulations.[2]  In their defense, Defendants have consistently and aggressively maintained that they have no liability whatsoever to Plaintiffs under the FLSA or any other legal theory.  Courts have long recognized that such disputes in litigation regarding liability under the FLSA constitute a "*bona fide* dispute." *See Lynn's Food Stores, Inc.*, 679 F.2d at 1352-54.  Indeed, the parties have agreed to settle this dispute only after extensive discovery and motion practice conducted in several different, related cases over several years.

---

[2] In addition to his claims of failure to pay overtime required by the FLSA, Plaintiff David Hutchinson brought a claim of retaliation under the FLSA.  A portion of the consideration described in Paragraph 2 of Plaintiff David Hutchinson's Settlement Agreement is expressly allocated as consideration for his release of the retaliation claim he alleged in the Action.

In addition, the parties' settlements clearly constitute a "fair and reasonable resolution" of this *bona fide* dispute.  The global settlement was the result of arms-length negotiation facilitated by one of the country's most respected wage and hour litigation mediators, Michael Dickstein.  All of the parties were represented by experienced and competent counsel who have handled numerous other wage and hour matters on class, collective, and individual bases. (Hanson Decl. ¶ 6.)  The parties spent considerable time and energy analyzing the merits of the case and were intimately familiar with the strengths and weaknesses of the parties' litigation positions.

Further, each of the Plaintiffs here has agreed to his own individual settlement. Plaintiffs will receive meaningful compensation—a minimum of $3,500 per person, and up to $45,450—calculated based on the number of weeks each Plaintiff worked overtime during the FLSA's two-year statute of limitations period.  Specifically, each Plaintiff will receive $150 for every week he worked overtime during the two-year FLSA statute of limitations. (Hanson Decl. ¶ 10.)  The number of overtime weeks for each Plaintiff is based on the Plaintiff's own estimate of weeks in which he worked overtime during the relevant statute of limitations period. (Hanson Decl. ¶ 11.)[3]

This amount fairly compensates Plaintiffs for the value of their claims for several reasons.  As an initial matter, the claims at issue in this case were for the time period when these Plaintiffs were classified as "independent contractors."  Thus, for these Plaintiffs to recover anything, they had to prove that one or both of the Defendants "employed" them for the purposes of the FLSA. There was substantial risk on these issues, as evidenced by the fact that Defendants prevailed on the question of employment on summary judgment motions in

---

[3] Defendants do not agree with Plaintiffs' calculations, but do not dispute them for purposes of this motion.

several related cases. (Hanson Decl. ¶ 12.) DIRECTV also prevailed on the question of employment after a two-week federal jury trial in the District of Arizona last year resulted in a defense verdict for DIRECTV (the only defendant in that case) on this issue. (Hanson Decl. ¶ 12.) Here, if these Plaintiffs were unable to establish that Defendants were their employers, their claims would have failed entirely.

All Plaintiffs were also vulnerable to Defendants' argument that, even if Plaintiffs were employed by one or both Defendants, Plaintiffs were exempt as commissioned employees of retail establishments. *See, e.g.*, *Carpenter v. DIRECTV, LLC,* No. 14-CV-02854-MJW, 2017 WL 4225797, *7 (D. Colo. May 16, 2017).

Moreover, as noted above, several courts in the related cases have granted Defendants' motions for summary judgment on the issue of willfulness, holding that Defendants did not willfully violate the FLSA, which limited plaintiffs' recovery to a two-year look back period.[4]  Assuming the question of willfulness would have survived summary judgment here, it is possible a jury in this case would have concluded the same, which would have made recovery of any third-year time in this case an unlikely proposition.

In addition, and dramatically impacting the scope of recoverable damages, there was always the possibility that a jury would reject Plaintiffs' primary claims and find that Plaintiffs understood that their "piece-rate" compensation structure paid Plaintiffs for all working time.  Had a jury made such a determination, and found for Plaintiffs on all other issues, the most Plaintiffs could have recovered was an overtime premium of just 0.5 times their regular rate of pay for the few hours of overtime they worked during the weeks in

---

[4] *See Schmidt v. DIRECTV, LLC*, No. 14-cv-03000 (D. Minn.), Dkt. 314 at p. 15; *Le v. DIRECTV, LLC,* No. 2:16-cv-01369 (C.D. Cal.), Dkt. 159 at pp. 37-38; *Andersen v. DIRECTV, LLC*, No. 2:14-cv-02307 (D. Ariz.), Dkt. 146 at pp. 14-15.

which they worked overtime and did not receive such pay. In that vein, several courts have followed the Second Circuit's reasoning in *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) and held that plaintiffs are legally foreclosed from recovering damages for so-called overtime "gap" time. That is, plaintiffs cannot recover wages, pursuant to a claim for unpaid overtime, for unpaid work they performed during the first 40 hours worked in overtime weeks. Indeed, DIRECTV prevailed on this issue in a motion *in limine* during the jury trial in the District of Arizona and in a pre-trial ruling on a motion *in limine* in the Northern District of Iowa. Had Defendants prevailed on that issue here, it would have been another independent basis to significantly reduce the recovery available to Plaintiffs.

Against this backdrop, a comparison of the amounts Plaintiffs are set to receive in the settlements with their realistic "best day" after a successful trial demonstrates that the compromises are reasonable and provide Plaintiffs fair consideration for the release set forth in the Parties' settlement agreements. The $150 per overtime week provided by this settlement equates to 10 hours of additional pay per week at the rate of $15.00 per hour. (Hanson Decl. ¶ 11.) Given that Plaintiffs most commonly worked five days per week, the settlement provides two additional hours of pay for each day worked in an overtime week. *Id.* If the settlement is viewed through the lens of Defendants' argument that only the 0.5 overtime premium was recoverable, the settlement actually provides four hours of additional pay per day. *Id.* Though their time estimates varied somewhat, Plaintiffs generally testified that they worked between 9 and 10 hours per day and that 2 to 4 of those hours were unpaid. *Id.* Because the settlement effectively provides back pay for between 2 and 4 hours (depending on which side's proffered calculation is used) per day, Plaintiffs' counsel believes the settlement provides the Plaintiffs with close to "make whole" relief. *Id.* While it

is true that a jury could award them more after a successful trial—for instance, liquidated damages or an additional year of limitations period upon proving willfulness—it is also true that a jury could award them less, or nothing at all. In light of all the risks of ongoing litigation, this settlement represents a reasonable resolution of this case and should be approved.[5]

### B.  The Attorney's Fees Provision of the Settlement Should Be Approved

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (2008). Unlike most fee-shifting statutes, the attorneys' fee award under the FLSA is mandatory. *Compare* 29 U.S.C. § 216(b) (a court "shall" award fees) *with* 42 U.S.C. § 1988(b) (a court "may" award fees "in its discretion"). The "case law construing what is a 'reasonable' fee applies uniformly" to all federal fee-shifting statutes. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709 (1945), Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b). Thus, a prevailing plaintiff in a FLSA case is entitled to a reasonable award of attorneys' fees and costs. 29 U.S.C. § 216(b). Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected

---

[5] As noted above, this case is one of several related cases pending in federal courts around the country. As of the time of this submission, all courts to have thus far issued orders have approved settlements on the same basic terms presented here as fair and reasonable. *See Hebron, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-CV-08155 (N.D. Ill.) (Doc. 238); *Anaya, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-CV-05703 (N.D. Ill.) (Doc. 238); *Banks, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-cv-00398 (S.D. Miss.) (Doc. 108); *Renteria-Camacho v. DIRECTV, Inc. et al.*, Case No. 2:14-cv-02529 (D. Kan.) (Doc. 116); *Tapia, et al. v. DIRECTV, LLC, et al.*, Case No. 2:14-cv-0939 (D.N.M.) (Doc. 125); *Schmidt et al. v. DIRECTV, LLC, et al.*, Case No. 0:14-cv-030000 (D. Minn.) (Doc. 345).

federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel by ensuring that if they prevail, counsel will receive fees commensurable with what they could obtain in other litigation. *See* S. Rep. No. 94-1011, p. 6 (1976), U.S. Code Cong. & Admin. News 1976, p. 5908; *see also Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987) ("[i]t strongly appears that Congress intended to encourage private citizen enforcement of the FLSA."). Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *Andersen v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy").

Courts typically use the "lodestar" method to determine a reasonable amount of attorney fees under the FLSA. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F.Supp.2d 212, 216 (D.Mass.2004) (applying the lodestar standard to an FLSA action). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Gay Officers Action League*, 247 F.3d at 295. There is a strong presumption that the lodestar amount is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-554 (2010).

The settlement agreements with each of the Plaintiffs provides that Defendants will pay Plaintiffs' counsel a flat amount of $26,000 for each Plaintiff, separate from the amounts Defendants have agreed to pay the Plaintiffs to settle the liability portion of their claims. (Hanson Decl. ¶ 13.)  This agreement is reasonable not only because each Plaintiff has individually agreed to that allocation, but also because this amount constitutes greater than 50% discount on the lodestar calculated by Plaintiffs' counsel and costs incurred pursuing

Plaintiffs' claims.   (Hanson Decl. ¶ 15-16.)   As noted above, the Plaintiffs in this case participated in *Lang*, *Acfalle*, and *Arnold*, actions that had been ongoing for more than seven years.   Plaintiffs' counsel maintained detailed time records throughout the litigation.   Those records reflect an investment of over $25 million in lodestar in the individual post-*Lang* actions, including this one, at a blended hourly rate of approximately $405 per hour.   In addition, Plaintiffs' counsel has incurred over $1.5 million in costs pursuing the claims in these cases.[6]  (Hanson Decl. ¶ 15.)  Dividing the total lodestar amount calculated by Plaintiffs' counsel, as well as the total costs amount, by the 342 Plaintiffs in the related actions included in the parties' global settlement results in an average amount of $72,423 in lodestar and $4,574 in costs attributable to each Plaintiff.   Plaintiffs' counsel will receive $26,000 to account for both fees **and** costs per Plaintiff, which reflects a substantial discount—more than 50%—off the actual investment of time and out-of-pocket costs that Plaintiffs' counsel incurred in achieving this result.   (Hanson Decl. ¶ 16.)   By any measure, this is a reasonable fee award. *See Goodwin v. Citywide Home Loans, Inc.*, No. SACV14866JLSJCGX, 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2, 2015) ("The requested fee award amounts to approximately 60% of these incurred fees, and a negative multiplier in this context suggests that the requested fee award is reasonable."). Strong policy considerations encourage litigants to settle on the amounts of attorney's fees and costs to be paid at the conclusion of litigation involving fee-shifting statutes.   *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of

---

[6] Plaintiffs acknowledge, as indicated above, *see* fn. 1, *supra*, that Defendants' non-opposition to this motion does not amount to an endorsement of Plaintiffs' positions herein.  To the contrary, Plaintiffs understand that Defendants reserve their rights to oppose those positions, including Plaintiffs' positions on the merits and their attorney's fee lodestar calculation should the Court not approve the parties' settlement and/or in other actions.

course, litigants will settle the amount of a fee.")  Given the reasonableness of the discounted lodestar and costs to be received by Plaintiffs' counsel, there is no reason to disturb the parties' agreements, and the fee and costs portion of the settlement should readily be approved.  *See Guice v. DIRECTV*, 2018 U.S. Dist. LEXIS 88585, *9-10 (May 24, 2018).

## IV.   CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court issue an order approving the settlement agreements submitted contemporaneously with this motion and dismissing this action with prejudice. A proposed order for the Court's consideration is submitted with this unopposed motion.

Dated:  August 21, 2018                              Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, *Admitted Pro Hac Vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:      816-714-7101
Email:  hanson@stuevesiegel.com

**LEAR WERTS LLP**
Todd C. Werts, *Admitted Pro Hac Vice*
2003 W. Broadway, Suite 107
Columbia, Missouri 65203
Telephone:    573-875-1991
Facsimile:      573-875-1985
Email: werts@learwerts.com

**BACKUS MEYER & BRANCH LLP**

By:  /s/ H. Jonathan Meyer
      H. Jonathan Meyer
      116 Lowell Street
      PO Box 516
      Manchester, NH 03105
      Telephone: 603-668-7272
      Fecsimile: 603-668-0730
      Email: jmeyer@backusmeyer.com

      *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2018, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ H. Jonathan Meyer